Good morning. May I please the court? I'd like to reserve two minutes of my time for rebuttal if I may. Yes, you may. Thank you. The district court dismissed my client's complaint for failure to state a claim. That's a drastic step that's permitted only where there is no plausible basis for liability against the defendant. If there's any reasonable expectation that discovery will reveal evidence to support the plaintiff's claims, the plaintiff must be allowed to proceed to discovery. We contend that we easily meet that standard, allowing us to seek the discovery we need to prove our case that John Hancock failed to either one, notify my client that it was holding his life insurance benefits, or two, timely achieve those benefits to the state of Illinois on claim property program. Let's take the second one. As I read the GRA paragraph 4A4, it seems to expressly say that the dormancy period only starts to run at the point that they do a match in the SS death How did they miss the timeline for misjudging? It's correct that the GRA says that with regard to whether the Illinois Attorney General will come after John Hancock for violations of the Illinois on claim property statute. Of course, the GRA does not change what the Illinois on claim property act says. The Illinois on claim property act provides that life insurance benefits must be paid, misjudged to the state within five years of the death of the insured. And how do you get an implied, even if we were to accept that it wasn't expected that John Hancock would comply with the GRA rather than the statute, how do you get an implied cause of action out of the statutory duty that's intended to benefit the state, and in fact not benefit your client? I missed the last part of your question. Sure. How do you get an implied cause of action out of a violation of the statute? Well, it's, our main claims on this basis are unjust enrichment and conversion. But you're basing them, in this appeal at least, you're basing them on the GRA. The GRA is important because... Are your claims based on the GRA? They are not. Okay. So you concede that your clients are not intended third party beneficiaries of the GRA? We don't concede that. We did argue below and we do maintain here that to the extent what we're claiming is interpreted as enforcing the GRA, we don't really think that's the correct way to look at it. But to the extent that we are, we are the intended third party beneficiaries. How can you say that? I mean, the GRA recites that it's being entered into to resolve ongoing tax audits. You concede that it's governed by Illinois law. Illinois has a strong presumption against third party beneficiary theories. Unless there is explicit language in the agreement or something in the agreement tantamount to explicit language. This agreement has no provision that indicates by any generous stretch of the imagination that it's intended to benefit anyone except the states. There are two responses. The GRA does recite in its opening paragraphs, John Hancock's position, that it has always acted in the best interest of its beneficiaries and policyholders. That's part of the motivation that it entered into the agreement. Second, the unclaimed property laws, including Illinois', are at least part of their purpose is to benefit the owners of unclaimed property like my client. For example, the Illinois statute requires that before property is acceded to the state, the holder, in this case John Hancock, has to send a mail notice to the last known address of the owner in order to notify them that that's about to happen. But Jacob, virtually every government regulatory agreement is intended to benefit someone that the government is charged with protecting their interests. And yet Illinois law and restatement section 313, comment A, make clear that with government contracts, we're to assume there's no third party, intended third party beneficiary unless it really comes out and quite clearly says it. And you haven't cited any authority from Illinois that's contrary to that. So I don't understand why you're relying on the GRA. Well, if I could point out this, even if we're not third party beneficiaries of the GRA, it is important to know whether or not John Hancock complied with it for purposes of whether their conduct constitutes unjust enrichment, whether they were withholding benefits that they had voluntarily agreed to pay over. But if Illinois law is that you're not a third party beneficiary of the GRA, what that is saying is that Illinois has made a policy decision that you can't come in and bring a claim for violation of the GRA. I don't see how merely changing the title or caption on your claim from third party beneficiary to unjust enrichment, that would just completely unwind section 313 and Illinois law. Okay. Let's assume that we're not third party beneficiaries of the contract and let's assume that we are not trying to enforce the GRA. Okay. So what's your claim? Whether John Hancock complied with it, that is whether John Hancock conducted a sweep of the Master Death Index in the third quarter of 2011 to line up his insurers and see if they were on the death index or not, see if they had died. If they had done that, John Hancock would have known at that time that my client's mother, Molly Feingold, had passed away five years earlier. So you just said if they had complied with the GRA, they would have known your client's mother had passed away. And if they had known that, it would have given rise to a duty under the Illinois unclaimed property statute. But I thought you said you're not relying on a breach of the GRA. It sounds to me you tell us you're not relying on the GRA, but then when we ask you to explain the theory, you begin by saying if they complied with the GRA. As a factual predicate in so far as what is John Hancock's claim. You've got to show a duty that's owed to your client here. You've got to show a duty to sweep the Social Security record that's independent of the GRA because of your concession that you're not relying on the GRA. Some duty that's owed to your client or to beneficiaries of these life insurance policies. And there's no such duty that's been recognized at common law by any state. There's no Illinois statute that imposes any such duty. So I'm grasping with what the source of that duty is. The fact of the matter is John Hancock obligated itself voluntarily to do so. To the government. Correct. And now we want to know whether it did it or not. Because whether it did it or not will tell us whether it acted within its duty under Illinois law to achieve those proceeds to the state of Illinois. You're still relying on trying to bring a cause of action based at its heart on a breach of the duty set forth in the GRA. And I think that's shown by your inability to answer Judge Salyer's question. Assume they fully complied with the GRA. Or assume you can't even rely on a breach of the GRA. Assume the GRA didn't exist. Yes. What's your claim? What's the source of the duty here? Then we need to know when John Hancock knew Molly Feingold died. When did the records of the corporation reflect that? But you can't use a lawsuit for the purpose of discovery. You've alleged they had a duty to ascertain when she died by sweeping the Social Security records. That duty, if it exists at all, has to have a source. The source can be a statute. The source can be the common law. There may be other sources, but you haven't articulated any. Do you allege in the complaint that they knew she died? We don't know. We don't know when they knew. There's the thing. You file the complaint and you don't allege that. I don't think you can just say we want to have an open discovery. We don't know what our claim is yet. Maybe they knew. Maybe they didn't. We'd like to have a lawsuit to see if they knew. Well, we know one thing, Your Honor. We know that they did achieve $459 in dividends. They call them dividends. Although that $459 is the exact same face amount of the policy that Molly Feingold purchased in 1945. That seems like a strange coincidence. We've never gotten any explanation for why those two numbers are exactly the same. So they did know how to achieve money in Molly Feingold's name for the State of Illinois. Maybe it's because they knew that she had died. We don't know. Maybe the records of the corporation reflected that earlier. Maybe she was identified in the Veris audit. I don't know whether you broke into my car this morning before coming here. I can't sue you and then ask an interrogatory to see if you did it. It just doesn't work that way. Well, we think we have a good faith basis. We have a reasonable expectation that we will find evidence that John Hancock withheld the money longer than they should have. Chief Judge Lynch, do you have any questions? No. Good morning, Your Honor. It's Edwin Shallott on behalf of the John Hancock defendants. Plaintiff's theory has evolved from the district court to this appellate court, and it seems to be somewhat evolving now. But let me say that I think the district court's judgment should be affirmed for three independent reasons. First, although plaintiff's appeal was seen to be premised on the GRA, plaintiff cannot enforce it because he is neither a party nor an intended third-party beneficiary of the agreement. The GRA, by its terms, resolved an unclaimed property audit. Those audits are designed to get additional property reported and sheeted to several states. The agreement was between John Hancock, an auditor on behalf of the states, and the states themselves, who have an interest, obviously, in obtaining that abandoned property. There's only one section of the GRA that addresses attempting to find beneficiaries. That's a classic instance of plaintiff being an incidental beneficiary. There's nothing in the GRA that suggests that beneficiaries have enforceable rights under the contract. And as Your Honors have noted, this is particularly true because the GRA is a contract with various state governments. Private parties are not deemed intended beneficiaries of a government contract unless a different intent is clearly intended. Otherwise, it would be very problematic if potentially millions of beneficiaries of life insurance policies could bring suit under the GRA. Second, there's no violation either of the GRA or of Illinois unclaimed property law. And that's what the district court found, and that judgment is rock solid. And I say that for the following reasons. With regard to the GRA, as Your Honor noted, the GRA does have business improvements, but the dormancy period would have begun running after a verified match was made in 2011. That wouldn't have occurred until 2016, so there's no violation of the GRA. But what about Illinois unclaimed property law? To take a step back, as the district court noted, the requirement, longstanding in insurance law, settled law for 100 years, is that a beneficiary has to provide due proof of death. That's actually in the insurance contract, in the appendix at page 49. You can see the language in the contract. It's established law in both Illinois and Massachusetts, and frankly, in all the other 48 states, too. The district court certainly addressed both Illinois and Massachusetts law. But it's also echoed in the Illinois unclaimed property law. Illinois unclaimed property law says that the amounts need to be sheeted only five years after the monies became, quote, That is a term of art that builds upon the fact that no amounts are due or payable until proof of death has been submitted. And that never happened here because the plaintiff didn't know about the existence of the policy. And when he finally came forward with proof of death, the policy was promptly paid. Note also that the Illinois unclaimed property law makes specific reference to the fact that the dormancy period runs at the time the policy is matured, a life insurance policy not matured by actual proof of death. That's the language of the Illinois unclaimed property statute, building on this same notion of the fact that you have to have proof of death before there's any obligation. It's a condition precedent before the insurance company has any obligation to pay. If you turn to the facts, as I understand it, your client, John Hancock, has customers, policyholders, who it has an obligation to pay to at some point if a short event occurs. And it also has other policyholders, could be the same ones that it's paying money to, and it has to pay money to until some event occurs, such as their death. And so if we have a young mother, a single mother with two children, who's got a life insurance policy and, say, an annuity, what John Hancock did is go through the death index to see if maybe they could stop paying the annuity, but wouldn't look to see if they had to return the life insurance proceeds. That's the allegation that's been made. There's nothing in the record that supports that. But don't we have to assume on a 12B6 motion that that's precisely what John Hancock was doing? Yes, Your Honor. And, Your Honor, that does not create an obligation. The fact that they were using it for one purpose, and, by the way, a somewhat salutary purpose, Your Honor, because, as you can imagine, if an insurance company continues to pay out annuity benefits after someone has died, learns of the death, and then has to go out and try to reclaim those benefits, that's not a desirable outcome either, Your Honor. So many insurance companies made it a practice to monitor that and to seek to find if there was, in fact, a death. We don't have that case here, by the way, Your Honor. There's only one policy at issue here. Ms. Feingold had a life insurance policy from 1945. And, by the way, the benefits that the Plaintiffs' Council talks about, having been eschewed into the state, which John Hancock properly did, those were demutualization proceeds. They are based on a separate Illinois unclaimed property law that deals specifically with the fact that two years after demutualization, if you can't find the beneficiaries, you have to seek that money. So that was sitting there, Your Honor. And the reason those databases exist in the country is precisely so people can learn about unclaimed property. That's what happened. Mr. Feingold was able to get that money. The amount of the money is explained in the record. It was 27 shares of John Hancock stock at the initial offering price of $17 a share. It's completely explicable in the record that those were demutualization proceeds, and that's what the district court noted based on the record before it was allowed to do. Finally, Your Honor, with regard, we think the third reason that there is no claim is because if you look at the district court's analysis of each of the causes of action, there's only three that are left on appeal. The first was unjust enrichment. Here, John Hancock acted both in accordance with its contract and in accordance with settled law. And by the way, Your Honor, to go to your point about whether insurance companies are within their right not to be consulting the DMF with regard to paying out benefits, three state courts have now addressed that issue of whether there is any legal requirement. The Ohio court, the court in Florida, and the court in West Virginia, and all have held that there is no obligation to be searching the DMF. So the company was not required to do that in order to identify it. It was and agreed to, and by the way, it was the first company to have agreed to one of these regulatory settlements. They've now become quite common in the industry. And now a number of states have enacted statutes that require the use of DMF, but that was not true at the time of the GRA. John Hancock, the first company to have done that, and that was 2011. And that would have begun the running of the five-year dormancy period to pay out those benefits. And long before that happened, Mr. Feingold came forward and promptly was paid. And John Hancock had no reason to know of the plaintiff's existence because he was not even a named beneficiary on the policy. So to return to the unjust enrichment, John Hancock acted both in accordance with the terms of the policy and in accordance with both insurance and unclaimed property law. In light of that, its conduct cannot give rise to a claim for unjust enrichment. There's also a contract here, the insurance contract, that governs the relationship of what John Hancock did, which also undermines an unjust enrichment claim. The plaintiff makes a claim for fiduciary duty. John Hancock had a contractual relationship with plaintiff's mother, which, as a matter of Illinois law, does not create a fiduciary relationship. All the more reason why plaintiff, as an unnamed beneficiary of that policy, has no fiduciary relationship with John Hancock. And finally, Your Honor, with regard to the claim of conversion, plaintiff never had any right to immediate ownership of the policy proceeds. John Hancock, therefore, never converted those benefits. And when plaintiff came forward with proof of death, as required both by the contract and by state law, those benefits were promptly paid, so there's no basis for a conversion claim. Counsel, let me inquire of Chief Judge Lynch whether she has any questions for you. Thank you, but no. Thank you, Your Honor. Good morning again. There are three quick points I'd like to make. The Illinois statute, the Unclaimed Property Act, does not require life insurance benefits to be paid five years after the corporation knows of the death of the insured. The statute says they must be paid, quote, or property goes unclaimed when it is, quote, unpaid for more than five years after the monies became due and payable as established from the records of the corporation. Later in the statute it says those monies are, quote, deemed due and payable although the policy or contract has not been surrendered as required. There does not need to be proof of death before those proceeds go, become unclaimed property under the Illinois unclaimed property law. All that's required is that the records of the corporation show that this person died more than five years ago. So the state could have brought a claim against them for violating the unclaimed property law. I just wanted to correct the misinterpretation of the statute. But where's that get you? You're hanging on by a thread here. Where's that? Unjust enrichment. If John Hancock withheld these benefits longer than they were supposed to under the Illinois unclaimed property law, then it would have been unjust. So they unjustly enriched themselves at the expense of the state and you can sue them for that? Your Honor, at the expense of the plaintiff, because the plaintiff went to check the Illinois unclaimed property database in early 2012 he found the $459 that had been eschewed and he said, what are these dividends? Is there a life insurance policy? Why would there be dividends with no policy? So he called John Hancock. They said, no, there's no policy. Here's the difficulty. There are lots of doctrines out there, but two in particular is when someone can bring a claim as a third-party beneficiary. Another is when someone can bring an applied cause of action under a state statute that regulates certain behavior. Your argument, it seems to me, fundamentally says forget those doctrines. We can throw them completely out because as long as we find that John Hancock, under either the GRA or the statute, had some duty to the state, then we just call it unjust that they didn't comply with it. And I don't see how you wipe out all those doctrines with such a robust application of unjust enrichment. We have Illinois case law, the Raintree Homes case, where the unjust enrichment at issue was the municipality's fees that they were imposing on home builders. So the idea that withholding the fees is illegal can lead to a claim of unjust enrichment. The restatement third of unjust enrichment and restitution that the parties discussed in their briefs says that quite clearly. I think everybody agrees that if we can make out a violation, we at least have a cognizable claim for unjust enrichment. Well, but you've now narrowed this case from a global case, all right, that there's got to be an overall duty to sweep the records to the specific facts of your case. If she did the dividends at a particular time but didn't as sheet the policy proceeds at that time, and had they done that, you would have been able to discover the existence of the policy or get to the proceeds a few months earlier. If that's your case, rather than a wide global claim, you don't belong in federal court. You can't meet the diversity amount and controversy requirement. Well, this is a class action complaint. Well, it's a class action so long as it's global. But now you want to narrow it to a highly idiosyncratic state of facts and peg it to the fact that they as sheeted the dividends without at the same time as sheeting the policy proceeds. We don't know that that happened to anyone except your mother. That's an example of how they didn't comply with the law. It could have happened to thousands of people easily. We're talking about millions of policyholders. Just in the state of Illinois, there could be thousands of people that that exact same thing happened to. Thank you, counsel. Chief Judge Lynch, do you have any further questions? No. Thank you, counsel.